United States Bankruptcy Court,
W.D. Pennsylvania.

June 20, 1996.

Gary W. Short, Pittsburgh, PA, for debtor.

James F. Grenen, O'Keefe, Grenen & Birsic, P.C., Pittsburgh, PA, for Mellon Bank, N.A.

### ORDER WITHDRAWING OPINION AND ORDER

JUDITH K. FITZGERALD, Bankruptcy Judge.

AND NOW, this **20th** day of **June, 1996**, it is **ORDERED** that the Memorandum Opinion and Order entered on the above-captioned motion on May 9, 1996, are **WITHDRAWN** and the deadlines and hearing date(s) set forth therein are **CANCELLED** pending further order of court.

**In re ELEPHANT BAR RESTAURANT, INC., Debtor.**

**Stephen D. TEBO, Plaintiff,**

v.

**ELEPHANT BAR RESTAURANT, INC.; Col–Han, Inc., d/b/a The Oasis Brewery; and Thomas Agresti, Chapter 7 Trustee, Defendants.**

Bankruptcy No. 94–10054–MBM.
Motion No. 96–QLF–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 9, 1996.

any rental agreement to use real property." Clearly, the only purpose for the arrangement in question was to rent for a business purpose the particular realty owned by Tebo. Moreover, the debtor's remaining interest in its lease with Tebo is much more than merely that of a guarantor because it still remains the sole lessee with respect to such lease; Tebo may not legally look to Col–Han for satisfaction of any obligation pertaining to his lease with the debtor. Finally, potential consequences to the bankruptcy estate in this case, in the event that § 365(d)(4) is applicable, are simply not relevant to a determination that such section is pertinent in this case.

Lawrence C. Bolla, Michael S. Jan–Janin, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA.

Gary V. Skiba, Yochim, Skiba, Moore & Nash, Erie, PA, for debtor.

Michael H. Bynum, Chrismun, Bynum & Johnson, Boulder, CO.

Thomas P. Agresti, Trustee, Agresti & Agresti, Erie, PA.

Gary I. Walt, Saitlan, Patzik, Frank & Samonty, Ltd., Chicago, IL.

### ORDER OF COURT

M. BRUCE McCULLOUGH, Bankruptcy Judge.

**AND NOW** this **9th day** of **May, 1996,** upon consideration of the motion of Stephen D. Tebo requesting (a) a declaration by this Court that an unexpired lease is terminated pursuant to 11 U.S.C. § 365(d)(4), and (b) surrender to himself and/or immediate possession of the leased premises, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

■ 1. Section 365(d)(4) applies to the unexpired lease between Tebo and the debtor. This Court finds that such lease is precisely the type of arrangement intended by Congress to be affected by § 365(d)(4), especially in light of 11 U.S.C. § 365(m) which provides that "for purposes of this section 365 ... leases of real property shall include

■ 2. Because the Chapter 7 trustee did not assume this lease within the 60–day period subsequent to either the date of the order for relief in this bankruptcy case (October 26, 1995) or the date upon which bankruptcy schedules were amended so as to reflect the lease (February 2, 1996), such lease is **deemed rejected** pursuant to § 365(d)(4). Because both time periods had expired at the time of Tebo's motion, this Court merely assumes, without approval, that the additional 60–day period from the date of amendment of the debtor's bankruptcy schedules is pertinent.

■ 3. On the basis of the Chapter 7 trustee's deemed rejection of the lease between Tebo and the debtor, this Court finds that such lease is hereby legally **terminated with respect to the debtor.** This Court, after considering *In the Matter of Austin Development Co.,* 19 F.3d 1077 (5th Cir. 1994), and *In re Locke,* 180 B.R. 245 (Bankr. C.D.Cal.1995), determines that both of these cases are consistent with the proposition that a § 365(d)(4) deemed rejection of a lease, while not necessarily extinguishing the rights therein of a nondebtor third party, nevertheless automatically extinguishes the rights therein of a debtor and/or bankruptcy trustee. With respect to a nondebtor third party, the lease may still exist but third party rights therein survive only if mentioned explicitly therein and/or to the extent recognized under pertinent nonbankruptcy law.

4. Tebo, by way of his conduct, has neither waived, nor is he estopped from asserting, his rights emanating from § 365(d)(4). Tebo's acceptance of rent payments prior to the deemed rejection is expressly nonprejudicial in this regard, 11 U.S.C. § 365(d)(3) ("Acceptance of any ... performance [prior to rejection of a lease] does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."), and acceptance of such payments after rejection is similarly not prejudicial. *In re Food Barn Stores, Inc.*, 174 B.R. 1010, 1015 (Bankr.W.D.Mo.1994) (citing *In re Fosko Mkt., Inc.*, 74 B.R. 384 (Bankr. S.D.N.Y.1987), to the effect that " '[t]he decisions are many which hold that even after the lease is deemed rejected, the landlord may freely accept use and occupation payments from a holdover debtor without waiving the deemed rejection' "). This Court also finds that the allegations, as well as copies of correspondence filed with this Court, of communications from Tebo to representatives of both Col–Han and the debtor, are not supportive of waiver or estoppel with respect to Tebo's rights under § 365(d)(4). Finally, this Court notes that Col–Han had approximately 2 months in which to seek action offered under the Bankruptcy Code; in particular, Col–Han could have prompted the Chapter 7 trustee to either (a) abandon the lease asset, or (b) assume the primary lease, after which an assignment to itself pursuant to § 365 could have been explored. These measures might have provided protection against, or negated the possibility of, the filing of Tebo's motion.

5. Because the debtor was not in possession of the leased premises on the date of the order for relief, the Chapter 7 trustee may only satisfy his responsibility to personally surrender such premises by notification to Tebo of the lease's rejection and termination. *See Chatlos Systems, Inc. v. Kaplan*, 147 B.R. 96, 100 (D.Del.1992). Tebo's receipt of this order will constitute such notification. *Id.*

6. The unexpired sublease between the debtor and Col–Han is also **rejected** given the deemed rejection of the primary lease between the debtor and Tebo. Such determination is supported by *Gordon v. Schneiker*, 699 P.2d 3, 4 (Colo.Ct.App.1984) ("cancellation of the prime lease ..., which discharged sublessor from further liability thereunder and revested possession of the premises in the owner, ... cause[d] a surrender and termination of the sublease as a matter of law"). *See also Chatlos*, 147 B.R. at 100; and *In re Dial–A–Tire, Inc.*, 78 B.R. 13, 16 (Bankr.W.D.N.Y.1987). Because this determination impacts upon whether 11 U.S.C. § 365(h)(1)(A)(ii) is applicable in this case, this Court has jurisdiction to render this portion of this order.

7. Because Col–Han's sublease has been rejected subsequent to the commencement of its term, Col–Han, pursuant to 11 U.S.C. § 365(h)(1)(A)(ii), retains a right to possess the premises which are the subject of said sublease, as well as other rights under the sublease, but only *"to the extent that such rights are enforceable under applicable nonbankruptcy* [ie., Colorado state] *law."* In other words, Col–Han retains possessory rights in the premises to the extent that its sublease is recognized under Colorado state law notwithstanding that the lessee/sublessor (ie., the debtor) retains no further right to possess such premises. Additionally, because the primary lease between Tebo and the debtor is not terminated with respect to any nondebtor third party, Col–Han retains any right that it obtained by way of *explicit language* in that lease agreement.

8. Because the issue of existence of a remaining possessory interest in the realty with respect to Col–Han, either by virtue of language in the primary lease agreement or Colorado state law, implicates matters involving purely state law, *Austin Development*, 19 F.3d at 1084; *Dial–A–Tire*, 78 B.R. at 16, this Court, therefore, is obliged to **abstain** from entertaining such dispute notwithstanding the obvious ramifications that such dispute could have with respect to administration of the debtor's bankruptcy estate. Entering into this Court's decision in this regard are the following additional considerations: (a) given the nature of the dispute, it should be handled on an expedited basis in the appropriate state court of Colo-

rado, (b) although this Court is equipped to interpret and apply pertinent Colorado state law regarding this issue with a minimum of difficulty, judicial comity is furthered by such abstention, and (c) regardless of whether Col–Han has remaining possessory rights in the realty, Tebo would nevertheless have to enlist the aid of the appropriate Colorado state court in the event that Col–Han refused an order of this Court to surrender possession of the premises in question. With respect to the last point, this Court notes that it is not faced with the issue of whether a debtor must abdicate itself from leased premises absent a state court proceeding because, in this case, the debtor is not presently in possession of such premises. This Court finds that Tebo may not resort to self-help with respect to a nondebtor subtenant notwithstanding the "surrender" language in § 365(d)(4). *See In re Urbanco, Inc.,* 122 B.R. 513, 520 (Bankr.W.D.Mich.1991).

9. The automatic stay of 11 U.S.C. § 362(a) will not preclude Tebo and/or Col–Han from instituting an action in the appropriate state court of Colorado to adjudicate the state law issue(s) referred to in paragraphs 6 and 7 of this order because such action (a) is not against the debtor in this case, and (b) is not with respect to property that remains a part of this debtor's bankruptcy estate. To the extent that this stay is asserted with respect to such action, this Court wishes to make clear that it will freely grant relief from such stay.

10. This Court's declaratory relief regarding the deemed rejections of both the primary lease and sublease in this case, as well as their consequences, need not follow a hearing given that these matters are effected by operation of law. This procedural decision is consistent with the stated intent of Congress "to assist lessors in obtaining a speedy resolution of the status of their property," D. Epstein, S. Nickles & J. White, *Bankruptcy Practitioner Treatise Series* § 5–10 at 465–66 (1992), and is buttressed by this Court's inherent authority under 11 U.S.C. § 105(a). This Court nevertheless also wishes to make clear that the equitable relief sought by Tebo in the form of repossession could only have been obtained by way of an adversary proceeding had the debtor still possessed the property. This conclusion follows necessarily from Rules 7001(1) and 7001(7) of the Federal Rules of Bankruptcy Procedure. However, because Col–Han, rather than the debtor, presently possesses such property, this matter cannot appropriately be viewed as an adversary proceeding. This conclusion is also supported by the fact that that portion of Tebo's requested relief in the nature of repossession may not actually be obtained in any event from this Court.

**IN SUMMARY,** Tebo's motion with respect to the debtor is **GRANTED** regarding both termination of the primary lease and surrender of the premises. However, notwithstanding the deemed rejection of Col–Han's sublease, this Court **ABSTAINS** from adjudicating Tebo's motion regarding whether Col–Han retains possessory rights either by way of language in the primary lease (ie., whether it is also effectively terminated with respect to Col–Han) or pursuant to Colorado state law.